AUTAR SINGH BHINDER, EXECUTOR (ESTATE
OF BALJIT SINGH BHINDER) *v.*
SUN COMPANY, INC.
(SC 15820)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued April 28—officially released August 11, 1998

*William J. O'Sullivan,* for the appellant (defendant).

*John Morgan,* with whom was *Albert J. Barr,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The plaintiff, Autar Singh Bhinder, the administrator of the estate of the decedent, Baljit Singh Bhinder, brought this wrongful death action against the defendant, Sun Company, Inc., alleging, inter alia, that the defendant had failed to provide adequate security to protect its employee, the decedent, from foreseeable harm from criminal assault by a third party. The dispositive issue in this appeal is whether a defendant in a negligence action may cite in a criminal assailant as an apportionment defendant. The trial court granted the plaintiff's motion to strike the defendant's apportionment complaint against the assailant because it concluded that General Statutes § 52-572h,[1] the compar-

---

[1] General Statutes § 52-572h provides in relevant part: "Negligence actions. Doctrines applicable. Liability of multiple tortfeasors for damages. . . .

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . ."

ative negligence statute, permits apportionment only between parties alleged to have been negligent. In this appeal,[2] the defendant argues that the trial court improperly granted the plaintiff's motion to strike the apportionment complaint because: (1) this court previously has recognized the viability of such a complaint in *Bohan* v. *Last*, 236 Conn. 670, 674 A.2d 839 (1996); (2) as a matter of statutory interpretation, the apportionment complaint falls within § 52-572h; and (3) even if we were to conclude that the text of § 52-572h does not permit apportionment between negligent and intentional tortfeasors, we should nevertheless recognize such an action as a matter of common law. We agree with the defendant's third claim and, accordingly, we reverse the judgment of the trial court.

"In an appeal from a judgment granting a motion to strike, we operate in accordance with well established principles." (Internal quotation marks omitted.) *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 696, 694 A.2d 788 (1997). "[W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 270–71, 709 A.2d 558 (1998).

We assume as true the following facts as alleged in the plaintiff's complaint. The defendant was the owner of a Sunoco gasoline service station and convenience store (station) located at 336 Main Street in Norwalk. Nandu C. Patel and Sumitra N. Patel leased the station

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

from the defendant and operated it pursuant to a franchise agreement (agreement) with the defendant. The defendant was responsible for the supervision of the franchisees, their agents and their employees. In addition, the defendant installed and supervised all security measures located at the station. Pursuant to the agreement, the station was to be operated twenty-four hours a day, seven days a week. The station had experienced a history of criminal incidents, including prior thefts and an armed robbery, of which the defendant was aware. The decedent was employed at the station and on April 13, 1995, he worked from 6 p.m. to 6 a.m. Sometime during that time period, an armed assailant entered the premises and shot the decedent several times in the head and chest. The assailant took several hundred dollars from the cash register and fled. The decedent was discovered by a delivery man early on the morning of April 14, and subsequently died of his injuries. Thereafter, the plaintiff brought a wrongful death action against the defendant, alleging, inter alia, that it had been aware of prior criminal activity at the station, but had negligently failed to provide adequate security, and that such negligence was the proximate cause of the decedent's death. Pursuant to General Statutes §§ 52-572h and 52-102b,[3] the defendant subse-

[3] General Statutes § 52-102b provides: "Addition of person as defendant for apportionment of liability purposes. (a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

quently filed a two count apportionment complaint against Raul Garcia, Jr., the decedent's alleged assail-

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallo-

ant,[4] seeking apportionment of liability.[5] In both counts of the complaint, the defendant alleged that Garcia intentionally shot the decedent and was responsible for his death. The defendant alleged in the first count that Garcia acted recklessly, and in the second count that Garcia acted wilfully and wantonly. The plaintiff filed a motion to strike the defendant's apportionment complaint for failure to state a cause of action upon which relief could be granted asserting that, as a matter of law, apportionment of liability pursuant to § 52-572h applies only to parties whose conduct was negligent. The trial court agreed and granted the plaintiff's motion to strike the defendant's complaint. This appeal followed.

We first consider the defendant's argument that *Bohan* is authority for the proposition that a defendant in a negligence action may cite in reckless and intentional tortfeasors for apportionment of liability. The defendant's reliance on *Bohan* is misplaced because, unlike the present case, the allegations in the apportionment complaint in *Bohan* involved claims of negligence. *Bohan* v. *Last*, supra, 236 Conn. 674. The plaintiff in *Bohan* brought a wrongful death action against a bar, which was alleged to have served alcohol to a minor who later was involved in a motor vehicle accident that led to the death of a passenger in the car the minor was operating. Id., 672. The defendant thereafter sought

cated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

[4] The apportionment complaint alleged that Garcia presently was incarcerated, but did not specify the offense.

[5] The defendant also filed an apportionment complaint against Nandu and Sumitra Patel.

to cite in as additional defendants bar patrons who allegedly had furnished alcoholic beverages to the minor. Id., 673. This court reversed the trial court's ruling granting the plaintiff's motion to strike the defendant's third party complaint, which sounded in negligence, concluding that the complaint was cognizable if it alleged that the patrons knew or had reason to know that the individual was a minor. Id., 681. Our decision in *Bohan*, therefore, provides no assistance to the defendant in the present case.

We next address the defendant's argument that the trial court improperly concluded that § 52-572h does not permit the apportionment of liability between negligent and intentional tortfeasors. Specifically, the defendant contends that although its apportionment complaint against Garcia alleges reckless, wilful and wanton conduct, such apportionment is permissible under the statute because the underlying action between the plaintiff and defendant remains one of negligence, which is within the scope of the statute. In opposition, the plaintiff argues that the plain language of § 52-572h provides that only negligent persons may be cited in by the defendant for apportionment for liability purposes. We agree with the plaintiff.

Our resolution of the defendant's claim is guided by well established principles of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative

policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997). "We also note the rule of statutory construction that statutes in derogation of common law 'should receive a strict construction and [should not] be extended, modified, repealed or enlarged in its scope by the mechanics of construction.' " *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995).

We begin our analysis by examining the text of the statute. Section 52-572h (c) provides in relevant part that "if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the . . . damages . . . ." Section 52-102b (a), which provides the procedural vehicle by which a defendant in a negligence action may cite in a party for apportionment of liability purposes, provides that "[a] defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be *liable pursuant to said section* for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. . . ." (Emphasis added.)

"By its own terms, the comparative negligence statute [§ 52-572h] applies only to 'causes of action based on negligence.' " *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 782, 610 A.2d 1277 (1992). "The language of § 52-572h is unambiguous; it provides that comparative negligence principles apply: 'In causes of action *based on negligence* . . . .' " (Emphasis in original.) *Lukas* v. *New Haven*, 184 Conn. 205, 212, 439 A.2d 949 (1981). Although the defendant correctly asserts that the underlying action is one of negligence, the trial court

concluded, and we agree, that in order for a defendant to add a person to such an action for purposes of apportionment of liability, the person sought to be added must also be one who is or may be liable pursuant to § 52-572h. See id. ("§ 52-572h does not apply to actions for personal injuries based on General Statutes § 13a-149 [the highway defect statute because liability] . . . under § 13a-149 is purely for breach of a statutory duty and does not arise from negligence"). Because the apportionment complaint alleges that Garcia's conduct was reckless, wilful and wanton, he is not liable pursuant to § 52-572h and cannot be added for purposes for apportionment.

The defendant argues nonetheless that the term "negligence" as used in § 52-572h must be construed to encompass its allegations of reckless, wilful and wanton conduct against Garcia in order to effectuate the legislative intent to have parties responsible only for their proportionate share of liability.

A review of the legislative history of § 52-572h belies the defendant's claim that the legislature considered conduct other than negligence in drafting the comparative negligence statute. Prior to the statutory scheme for the apportionment of damages, the common law was of joint and several liability whereby "even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages, as long as his negligence was a proximate cause of the plaintiff's injuries." *Donner* v. *Kearse*, 234 Conn. 660, 667, 662 A.2d 1269 (1995). There was no contribution among joint tortfeasors. Id., 666. The legislature sought to remedy the growing concerns regarding the cost and availability of liability insurance by abrogating the doctrine of joint and several liability for negligent tortfeasors and thus imposing limitations on a negligent defendant's obligation to pay damages. Id., 667. "The Tort Reform Act was drafted in response to rapidly

rising insurance rates, which, some believed, would be curtailed if tort liability could be limited and systematized. As finally enacted, the act represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 185, 592 A.2d 912 (1991); see G. Royster, "Joint and Several Liability and Collateral Sources Under the 1987 Tort Reform Act," 62 Conn. B.J. 257 (1988) ("[t]he rationale for [tort reform] was that insurance was becoming too expensive and it was basically unfair to require one co-defendant to pay an entire judgment at the option of the claimant"); 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5980, remarks of Representative Irving J. Stolberg ("the entire concept of tort reform is . . . a result of rising insurance rates").

An important element of the Tort Reform Act of 1986 (Tort Reform I); Public Acts 1986, No. 86-338; was § 3, which "provided that each defendant would initially be liable for only that percentage of his negligence that proximately caused the injury, in relation to one hundred percent, that is attributable to each person whose negligent actions were a proximate cause of the damages." (Internal quotation marks omitted.) *Donner* v. *Kearse*, supra, 234 Conn. 667. The Tort Reform Act of 1987 (Tort Reform II); Public Acts 1987, No. 87-227; revised, inter alia, "the class of individuals to whom the jury could look in determining whose negligence had been a proximate cause of a plaintiff's injuries" from "person" to "party." *Donner* v. *Kearse*, supra, 668; see General Statutes § 52-572h (c). It also included a provision that permitted defendants "to implead persons who might have been negligent, but who had not been pursued by the plaintiff." *Donner* v. *Kearse*, supra, 669. Because the legislature in enacting Tort Reform I and Tort Reform II was responding to a perceived

insurance crisis; see *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 185; the legislature accordingly was focused on the protection of insurable interests, which ordinarily do not encompass intentional conduct. See 1 G. Richards, Insurance (6th Ed. Freedman 1990) § 1:13, pp. 47–48 ("[i]t is universally recognized that an implied exception to coverage under any form of insurance is an intentional or expected injury, damage or loss"); R. Keeton & A. Widiss, Insurance Law (1988) § 5.4 (d), p. 518 ("[t]he principle that insurance should only be employed to transfer risks associated with fortuitous occurrences means that generally no coverage will exist for a loss that is caused intentionally"). Upon review of the text and legislative history of § 52-572h, we are not persuaded that the legislature intended the term negligence in § 52-572h to include conduct other than negligence.

Our conclusion that the text of § 52-572h does not support the interpretation urged upon us by the defendant, however, does not end our inquiry. The defendant also argues that as a matter of common law, we should extend the policy of apportionment to permit a defendant in a negligence action to cite in as an apportionment defendant a party whose conduct is alleged to be reckless, wilful and wanton. We agree.

"[I]n interpreting statutes we have on occasion read specific statutory references to indicate a legislative intent to exclude, by implication, other related potential referents. . . . [I]f in this case either the explicit language or the legislative history of [§ 52-572h] had indicated such a legislative intent, we would be required to respect that implication, and we would be precluded from reaching a result by way of common law adjudication that was contrary to that intent. . . . Plainly, every statute has some boundaries, and the question then arises whether, and when, it is appropriate to apply the statute as a matter of common law, beyond its

designated boundaries. . . . [W]e have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters." (Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 584–85. "On numerous occasions, we have reexamined and readjusted our common law principles to assure a proper and harmonious accommodation between judge made law and statutory law." *Bohan* v. *Last*, supra, 236 Conn. 680.

As an initial matter, our review of the statutory text and the pertinent legislative history does not evince an intent by the legislature to preclude the recognition of apportionment in a negligence action between negligent and intentional tortfeasors. With respect to public policy considerations, the plaintiff argues that such considerations militate against extending the principle of apportionment underlying § 52-572h to permit apportionment between a negligent and an intentional tortfeasor. Specifically, the plaintiff claims that the policy factors identified by the Louisiana Supreme Court in *Veazey* v. *Elmwood Plantation Associates, Ltd.*, 650 So.2d 712, 719–20 (La. 1994), denying apportionment in a negligence action between a negligent and an intentional tortfeasor compel a similar conclusion by this court.

In *Veazey*, the plaintiff was a resident in the defendant's apartment complex and was sexually assaulted in her apartment. Id., 713. The plaintiff brought a negligence action against the defendant, alleging, inter alia, that it had provided inadequate security. Id. At the close of trial, the defendant requested that the trial court submit a special interrogatory to permit the allocation of fault to the nonparty assailant. Id., 714. The Louisiana Supreme Court concluded that its comparative fault statute, which provides that a jury may allocate the

degree of "fault" to any another person, was sufficiently broad to encompass the comparison of negligent and intentional torts.[6] Id., 718. The court further concluded that a case-by-case analysis should be utilized to determine whether comparative fault principles should be applied in such cases, bearing in mind certain public policy concerns. Id., 719. The court stated that "public policy considerations inherent in the question of whether such a comparison *should* be made"; (emphasis in original) id.; compelled it to conclude that a comparison was not appropriate in that particular case because: (1) the scope of the defendant's duty to the plaintiff encompassed the exact risk of the occurrence that injured the plaintiff; (2) apportionment under these circumstances "would operate to reduce the incentive of the [defendant] to protect against the same type of situation occurring again"; id.; and (3) negligent and intentional conduct preclude comparison by a jury because they are different in kind. Id. The plaintiff argues that these same considerations weigh against permitting apportionment in the present case.

Citing *Veazey* as support, the plaintiff argues that apportionment should not be permitted because it is not appropriate to permit a negligent defendant to relieve itself of liability when the very basis of that liability is premised on the occurrence of a criminal act that the plaintiff alleges the defendant should have foreseen and taken reasonable steps to prevent. The plaintiff offers § 449 of the Restatement (Second) of Torts as support for its claim that the defendant should not be able to "avoid" liability based on the occurrence

---

[6] The Louisiana Code of Civil Procedure, art. 1812 (C), provides in relevant part: "In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to . . .

"(2) (a) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and if so:

"(i) Whether such fault was a legal cause of the damages, and if so:

"(ii) The degree of such fault, expressed in percentage. . . ."

of an intentional act that it should have prevented. In a related argument, the plaintiff contends that apportionment would reduce any incentive for a defendant to protect against such harm and that permitting apportionment in the present case would have the practical effect of obviating the cause of action for negligent failure to protect against a foreseeable harm inflicted by a third party. We disagree.

We previously have recognized that a defendant might be liable for injuries to a plaintiff as a result of a criminal assault by a third party if the type of harm caused is within the scope of the risk created by the defendant's negligent conduct. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607–608, 662 A.2d 753 (1995);[7] 2 Restatement (Second), Torts § 442B (1965).[8] We have never intimated, however, that a negligent party should be *solely* responsible for a plaintiff's resulting injuries inflicted by a criminal actor. In addition, we do not construe § 449 of the Restatement (Second) of Torts to compel such a result. Section 449 of the Restatement (Second) of Torts provides: "If the

[7] To determine whether a harm is within the scope of the risk created, "the harm actually suffered must be of the *same general type* as that which makes the defendant's conduct negligent in the first instance." (Emphasis in original; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 609. In *Stewart*, the plaintiff's decedent was murdered by a third party in a parking garage owned and operated by the defendant. Id., 599. We concluded that in view of the previous criminal activities that had occurred in the defendant's garage, "the harm that befell [the decedent] had been reasonably foreseeable and was within the scope of the risk created by the defendant's negligence." Id., 612.

[8] We previously adopted § 442B of the Restatement (Second) of Torts; see *Tetro* v. *Stratford*, 189 Conn. 601, 605, 458 A.2d 5 (1983); which provides in relevant part that "[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." 2 Restatement (Second), supra, § 442B.

likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." We interpret § 449 as authority that a negligent actor is not shielded from liability by the occurrence of the very event that made the conduct negligent, not that the actor should bear complete responsibility for the damages.

Furthermore, precluding the defendant from allocating fault is inconsistent with the principle of comparative negligence that a defendant should be liable only for that proportion of the damages for which he or she was responsible. *Donner* v. *Kearse*, supra, 234 Conn. 668–69; *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 381, 699 A.2d 271, cert. denied, 243 Conn. 933, 702 A.2d 640 (1997) ("a primary purpose of enacting [§ 52-572h] was to change the common law of joint and several liability such that a defendant would be liable only for that proportion of the damages for which he was responsible"); *Weidenfeller* v. *Star & Garter*, 1 Cal. App. 4th 1, 6, 2 Cal. Rptr. 2d 14 (1991) ("the purpose of [the comparative fault statute] is to prevent the unfairness of requiring a tortfeasor who is only minimally culpable *as compared to the other parties* to bear all the damages" [emphasis in original]); *Blazovic* v. *Andrich*, 124 N.J. 90, 99, 590 A.2d 222 (1991) ("the labels attached by the law to various types of conduct should not thwart the principle that it is the *overall fault* of the parties which is to be measured" [emphasis added]). The plaintiff's construction would have the incongruous effect of rendering a negligent party solely responsible for the conduct of an intentional actor, whose deviation from the standard of reasonable care is clearly greater.[9] An apportionment

---

[9] The Kansas Supreme Court illustrated the contradiction in treatment between a negligent and an intentional tortfeasor that would result were

defendant would be able to avoid apportionment of fault by demonstrating that his conduct was intentional as opposed to negligent. See *Weidenfeller* v. *Star & Garter*, supra, 6 ("[T]he statute has the limited effect of benefitting a negligent tortfeasor only where there are other equally culpable defendants, but eliminating that benefit where the other tortfeasors act intentionally. Stating the proposition reflects its absurdity.").

We are also unpersuaded by the plaintiff's claim that apportionment would permit a defendant to avoid liability or diminish a defendant's incentive to exercise a standard of reasonable care in providing security for his premises. Apportionment does not affect the determination of whether the defendant is liable under a theory of negligence but, rather, affects the determination of his *degree* of fault once a trier of fact has determined that his breach of a reasonable standard of care was a substantial factor in causing the plaintiff's injuries.[10] "Once it is determined that the defendant's conduct has been a cause of some damage suffered by the plaintiff, a further question may arise as to the portion

we to adopt the plaintiff's argument by the following hypothetical situation: "Assume that a visibly intoxicated third person in [a] restaurant negligently stumbles into and knocks down one guest, then intentionally pushes down another guest. In each case the restaurant breached its duty in the same manner—by failing to remove the intoxicated person from the premises before he harmed a guest. The results, however, vary. The restaurant is liable for only a proportionate fault share of the damages suffered by the first guest, but is jointly and severally liable for all damages suffered by the second guest." (Internal quotation marks omitted.) *Kansas State Bank & Trust Co.* v. *Specialized Transportation Services, Inc.*, 249 Kan. 348, 376, 819 P.2d 587 (1991).

[10] "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. *Catz* v. *Rubenstein*, 201 Conn. 39, 44, 513 A.2d 98 (1986); see *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994) (essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury)." (Internal quotation marks omitted.) *Santopietro* v. *New Haven*, 239 Conn. 207, 225, 682 A.2d 106 (1996).

of the total damages which may properly be assigned to the defendant, as distinguished from other causes." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 52, p. 345; see *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 184, 700 A.2d 38 (1997) ("[c]omparative responsibility does not come into play . . . unless the defendant is found to have proximately caused the plaintiff's injuries"). It is undisputed that a defendant seeks apportionment to reduce his percentage of the damages. Although joint liability concededly poses a more significant deterrent than comparative fault because a defendant is potentially liable for the entirety of the plaintiff's damages, apportionment does not allow a defendant to escape responsibility for the defendant's own negligent conduct.[11] Because a defendant would still be liable for his proportionate share of damages, he would continue to have a decided interest in exercising reasonable care.[12] We are not persuaded that joint liability is necessary to encourage a defendant's exercise of reasonable care. *Bohan* v. *Last*, supra, 236 Conn. 677 (permitting bar to implead patrons who purveyed alcohol to minor). Furthermore, permitting apportionment in the present case best comports with the principle of equitable apportionment of losses among responsible parties. See

[11] The plaintiff's skepticism regarding the effectiveness of apportionment, as compared to joint liability, in achieving an incentive for employers to maintain safe premises "does not render [apportionment] against public policy." *Weidenfeller* v. *Star & Garter*, supra, 1 Cal. App. 4th 8; see *Blazovic* v. *Andrich*, supra, 124 N.J. 107 ("[a]pportionment of fault between intentional and negligent parties will not eliminate the deterrent or punitive aspects of tort recovery").

[12] To effectuate consistency between § 52-572h and the common law, we engraft the provisions of § 52-572h to common-law apportionment between a negligent and an intentional tortfeasor. The statute provides for certain reallocation in the situation of an insolvent tortfeasor. In this regard, we note that in addition to the damages based on its percentage of fault, pursuant to 52-572h (g) (2) and (3), a negligent defendant also would be liable for the entirety of the plaintiff's economic damages should the share apportionable to a given defendant prove to be uncollectible, thus creating a further financial incentive for a defendant to exercise reasonable care.

*Reichert* v. *Atler*, 117 N.M. 623, 625, 875 P.2d 379 (1994) ("basis for comparative fault is that each [defendant] should be held responsible only for his or her percentage of the harm").

The plaintiff's final argument is that negligence is different in kind rather than degree from reckless, wilful and wanton conduct, and cannot be compared to these types of conduct. We disagree.

In *Blazovic* v. *Andrich,* supra, 124 N.J. 107, the New Jersey Supreme Court rejected the plaintiff's argument that the different types of conduct could not be compared for purposes of apportionment of fault, concluding that "we view intentional wrongdoing as different *in degree* from either negligence or wanton and willful conduct. . . . [By allowing comparison of] the various types of tortious conduct . . . we adhere most closely to the guiding principle of comparative fault—to distribute the loss in proportion to the respective fault of the parties causing that loss." (Citations omitted; emphasis added; internal quotation marks omitted.)[13] These cate-

---

[13] We note that other states have enacted statutes permitting the comparison of fault for apportionment purposes between a negligent and an intentional tortfeasor. See *Martin By and Through Martin* v. *United States*, 984 F.2d 1033, 1040 (9th Cir. 1993) (construing California statute to permit defendant in negligent supervision action, wherein child was sexually assaulted, to seek apportionment of noneconomic damages from intentional tortfeasor); *Thomas* v. *First Interstate Bank of Arizona*, 187 Ariz. 488, 489–90, 930 P.2d 1002 (1996) (statute permitted apportionment of liability between negligent and intentional tortfeasors as between allegedly negligent bank and murderer); *Weidenfeller* v. *Star & Garter*, supra, 1 Cal. App. 4th 6–7 (statute permitted apportionment between business owners and third party assailant in action involving security of premises); *Blazovic* v. *Andrich*, supra, 124 N.J. 106–108 (statute permitted apportionment between restaurant alleged to have failed to provide adequate lighting and security, and intentional conduct of assailant); *Reichert* v. *Atler*, supra, 117 N.M. 625 (business owner's negligent failure to protect patrons from foreseeable harm from third parties compared to conduct of assailant); *Siler* v. *146 Montague Associates*, 228 App. Div. 2d 33, 39–41, 652 N.Y.S.2d 315 (1997) (apportionment statute permitted defendant landlords in action involving security of premises to seek apportionment of liability from intentional tortfeasor);

gories of conduct all represent deviations from a reasonable standard of care.[14] We conclude that juries are fully competent to assess fault between negligent and intentional tortfeasors. "The different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault." Id.

We are unpersuaded by the plaintiff's policy arguments against extending § 52-572h as a matter of common law to permit a negligent defendant to apportion liability to an intentional defendant. We conclude that permitting apportionment in the present case would effectuate the principle underlying the comparative negligence statute of equitable apportionment among responsible tortfeasors. "Where possible, courts should, as a matter of common law adjudication, assure that the body of the law—both common and statutory—

---

*Field* v. *Boyer Co., L.C.*, 952 P.2d 1078, 1080 (Utah 1998) (term "fault" as utilized in comparative fault statute permitted apportionment of responsibility between negligent and intentional conduct); but see *Kansas State Bank & Trust Co.* v. *Specialized Transportation Services, Inc.*, supra, 249 Kan. 376 (school in negligence action wherein student was sexually assaulted by school bus driver could not apportion liability with assailant); *Veazey* v. *Elmwood Plantation Associates, Ltd.*, supra, 650 So.2d 720 (landlord in negligence action could not apportion liability with sexual assailant); *Turner* v. *Jordan*, 957 S.W.2d 815, 821 (Tenn. 1997) (psychiatrist's negligence in failing to protect against assault by hospital patient could not be compared to intentional conduct of patient).

[14] Wanton, reckless, wilful and intentional conduct demonstrate "a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights and safety of others or of the consequences of the action. . . . Wilful misconduct has been defined as intentional conduct . . . . While we have attempted to draw definitional boundaries between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, 207 Conn. 518, 532–33, 542 A.2d 711 (1988).

remains coherent and consistent." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 586. It is consistent with the principles of apportionment to permit the allocation of fault in a negligence action between a negligent and an intentional tortfeasor.

The judgment is reversed.

In this opinion KATZ, PALMER and MCDONALD, Js., concurred.

CALLAHAN, C. J., dissenting. I do not believe that a negligent defendant should be able virtually to absolve itself of liability by impleading an intentional tortfeasor whose very conduct it allegedly had a duty to protect against. I, therefore, join the dissents of Justices Borden and Berdon.

BORDEN, J., with whom CALLAHAN, C. J., joins, dissenting. I agree with the majority that General Statutes § 52-572h does not contemplate apportionment of liability between a negligent defendant and a person whose conduct was either reckless or intentional. I disagree with the majority, however, that this is an appropriate case for employment of the jurisprudential technique of using the statute as a source of common-law adjudication. I therefore disagree that the criminal assailant, Raul Garcia, Jr., may be cited in as an apportionment defendant, and I respectfully dissent.

For all of the reasons so persuasively marshaled by the majority, it is clear that the apportionment provision of § 52-572h applies only to those persons who were negligent, and not to those who were recklessly or intentionally tortious. By the same reasoning, however, in my view, it is also clear that the specific legislative allowance of allocation with respect to negligent persons precludes allocation, as a matter of common law, with respect to reckless or intentional tortfeasors.

"[I]n interpreting statutes we have on occasion read specific statutory references to indicate a legislative intent to exclude, by implication, other related potential referents. . . . [Where] the explicit language or the legislative history of [the statute indicates] such a legislative intent, we [are] required to respect that implication, and we [are] precluded from reaching a result by way of common law adjudication that [is] contrary to that intent." (Citation omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 584, 657 A.2d 212 (1995). As the majority makes clear, when the legislature provided for impleading persons who might have been negligent but who had not been pursued by the plaintiff, it "focused on the protection of insurable interests, which ordinarily do not encompass intentional conduct." Contrary to the majority, I conclude that in light of the legislative history and purpose of § 52-572h, it would be inappropriate to extend the policy of the statute to cover what are ordinarily uninsurable interests, namely, perpetrators of recklessly or intentionally tortious conduct. To do so would be inconsistent with the legislative policy of the statute by affording more protection to the allegedly negligent named defendant than the statutory scheme was designed to afford.

The purpose of this aspect of tort reform, as the majority explains, was to ameliorate the common-law rule of joint and several liability, pursuant to which one insured party was liable for the entire judgment at the option of the claimant. Thus, under the apportionment provision of the statute, the defendant who is sued can implead another potentially negligent defendant so as to permit an equitable sharing of liability between them. Furthermore, as the majority explains, this apportionment scheme was aimed at protecting what are ordinarily insurable interests, on the theory that, in the main, negligence claims are protected by insurance.

Thus, under this scheme—again, in the main—defendants would be liable to pay only their fair share of the judgments, and injured plaintiffs ordinarily would not be impacted by the allocation of a portion of the damages to uninsured defendants. This theoretical construct underlies the majority's conclusion that the statute cannot be read plausibly to include reckless or intentional conduct as impleadable interests, because they are ordinarily uninsured interests.

It also compels the conclusion, in my view, that the court should not in this instance extend the statute beyond its boundary. "[E]very statute has some boundaries, and the question then arises whether, and when, it is appropriate to apply the statute, as a matter of common law, beyond its designated boundaries." (Internal quotation marks omitted.) Id., 585. By applying the statute's apportionment policy beyond its boundary of negligence, the majority permits the defendant to do more than share its liability with another tortfeasor. In effect, it permits the defendant to shift most, if not virtually all, of its liability to that tortfeasor. Any jury that takes the court's instructions and its own duty seriously will inevitably conclude that the fault for the death of the plaintiff's decedent lies mostly, if not virtually completely, with the intentional tortfeasor, Garcia. Moreover, in most future cases in which an intentional—and uninsured—tortfeasor is cited in as an apportionment defendant, the likely outcome will be similar: the negligent and insured defendant will end up with responsibility for only a very small percentage of the judgment. This is not what the legislature intended when it enacted the apportionment provision of § 52-572h. It is contrary to that intent.

I acknowledge that my reasoning would result in what could be considered an anomaly in the law. Under my interpretation of the legislative policy, a party cited in who the defendant alleges was negligent could escape

apportionment by persuading the jury that his conduct was not negligent but worse—it was either reckless or intentional. I think, however, that is the necessary result of the ultimate legislative choice among the competing interests that yielded this particular part of tort reform.

I also disagree with the majority's engrafting onto its common-law adjudication the reallocation provision of the statute. See footnote 12 of the majority opinion. That is a statutory provision that concerns only the question of the collectibility of the ultimate judgment. In fashioning rules of liability under our common-law powers, courts do not ordinarily fashion mechanisms for the collectibility of the ultimate judgments. Such matters—which include liens, attachments and the like—are ordinarily matters for the legislature. Courts go too far in what can be a useful adjudicative technique of using a statute as a source of common-law adjudication when they start legislating. I believe that is what the majority has done in footnote 12 of its opinion.

I would, therefore, leave the defendant's liability to the ordinary common-law rules, without the benefit of apportionment with the criminal assailant in the present case. Accordingly, I would affirm the judgment of the trial court.

BERDON, J., with whom CALLAHAN, C. J., joins, dissenting. I agree with the majority that General Statutes § 52-572h pertains only to negligent tortfeasors. I disagree that the court should, as a matter of common law, include other tortfeasors in the apportionment scheme of § 52-572h.

With the adoption of § 52-572h specifically limiting apportionment between negligent tortfeasors, the legislature has occupied the field. As a result, this court should be reluctant to enter this field and formulate

public policy. "In areas where the legislature has spoken, however, the primary responsibility for formulating public policy must remain with the legislature. . . . It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words . . . . *Mozzochi* v. *Glastonbury*, 188 Conn. 276, 279, 449 A.2d 173 (1982)." (Internal quotation marks omitted.) *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987).

Pursuant to § 52-572h (g),[1] the legislature has adopted a policy with respect to insolvent defendants. In essence, § 52-572h (g) (2) provides that "noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount."

---

[1] General Statutes § 52-572h (g) provides: "(1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment."

This has the effect of not fully compensating a plaintiff for his or her noneconomic damages when there is an insolvent defendant. With respect to economic damages, the entire amount attributable to the insolvent defendant is allocated among the solvent defendants. In light of this statutory scheme, any further extension of § 52-572h must be left to the legislature and not the court.

Furthermore, apportionment of damages between negligent and intentional tortfeasors is not appropriate when the intentional acts that harm the victim are within the scope of the risk created by the negligent tortfeasor. In other words, in cases like the present case, where the intentional acts of Raul Garcia, Jr., that caused the death of the plaintiff's decedent were within the scope of the risk created by the alleged negligence[2] of the defendant, Sun Company, Inc., the defendant should be responsible for the plaintiff's damages without apportionment. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607–10, 662 A.2d 753 (1995); *Doe* v. *Manheimer*, 212 Conn. 784, 758-59, 563 A.2d 699 (1989); 2 Restatement (Second), Torts § 449 (1965).

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." 2 Restatement (Second), supra, § 449; *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234

---

[2] Specifically, the plaintiff, the administrator of the decedent's estate, alleged in the complaint that the defendant was negligent for failing "to fix, for an extended period of time, a faulty 'cash drawer' [at the gas station where the decedent was employed] necessitating that the door to the station remain unlocked at all times, including during mandated night time operation, in order to sell 'snacks,' " and for failing "to install adequate security measures when it became obvious that the franchisee and its employees faced a threat to their physical well being during mandated night time operation."

Conn. 609–10. This is further explained by the following comment from the Restatement: "The happening of the *very event* the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity."[3] (Emphasis added.) 2 Restatement (Second), supra, § 449, comment (b).

Accordingly, I dissent.

---

[3] This is clearly demonstrated by the following scenario. A security alarm company negligently installs a security system in a residence and, as a result, a third party is able to gain access to the premises and causes harm to the property owner. The alarm company should not be allowed to reduce its liability for the full damages caused to the property owner by seeking to implead the third party intruder for the purposes of apportioning damages when the harm caused by the third party was within the very risk that the alarm company had a duty to prevent. As § 449, comment [b], of the Restatement (Second) of Torts explains, that would make the duty owed by the alarm company to the property owner a nullity.