MARY L. CARD *v.* STATE OF CONNECTICUT ET AL.

MARY L. CARD *v.* JOHN J. CASTODIO, JR.
(AC 18555)

Foti, Spear and Hennessy, Js.

Argued September 14, 1999—officially released March 28, 2000

*Matthew Shafner*, with whom, on the brief, were *Amy M. Stone* and *James A. Hall*, for the appellant (plaintiff in each case).

*Richard D. Haviland*, for the appellee (defendant in the second case).

*Opinion*

HENNESSY, J. The plaintiff, Mary L. Card, appeals from the trial court's judgment setting aside a jury verdict that had been returned in her favor. On appeal, the plaintiff claims that (1) the court improperly ruled that an expert witness' opinion on apportionment of damages should have been excluded as speculative and (2) even if the expert testimony should have been excluded, the verdict should stand because the defendant is jointly and severally liable to the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On July 31, 1992,

the plaintiff suffered injuries when the car in which she was riding was struck from the rear by a vehicle driven by the defendant John J. Castodio, Jr.[1] The plaintiff sought treatment for her injuries from Joseph Zeppieri, an orthopedic surgeon. On December 11, 1992, the plaintiff again suffered injuries when the car in which she was riding was struck in a head-on collision by a vehicle operated by William Farnan while he was performing duties as an employee of the state of Connecticut. The plaintiff once again sought treatment from Zeppieri. On January 14, 1993, the plaintiff was involved in a third accident in which she suffered injuries when another vehicle crossed in front of her car, hooked onto the front end of her car and dragged her car into a parking lot. The plaintiff sought treatment again from Zeppieri.

The plaintiff then filed separate actions against the defendant, Farnan and the state of Connecticut, and the driver in the third accident. In all of her complaints, the plaintiff alleged that the accidents were caused by the defendants' negligence in operating their motor vehicles. The plaintiff settled her claim against the driver of the car in the third accident prior to trial, and the court thereafter granted the plaintiff's motion to consolidate the remaining two cases for trial.

During the trial, Zeppieri testified as an expert witness for the plaintiff on the issues of causation and apportionment of her injuries. Zeppieri testified that while each of the three accidents was a substantial

---

[1] The plaintiff brought separate actions against the defendant John J. Castodio, Jr., and the defendant state of Connecticut et al. stemming from separate automobile accidents. The cases were consolidated, and the jury returned verdicts against the defendants' in both cases. The court granted a motion to set aside the verdict in each case, and the plaintiff appealed. The plaintiff's appeal was withdrawn as against the state, and her appeal is now directed at the allegedly improper granting of Castodio's motion to set aside the verdict against him. We refer in this opinion to Castodio as the defendant.

factor contributing to the plaintiff's injuries, it was impossible to determine to a degree of medical certainty how much of the plaintiff's permanent injuries were attributable to each of the three accidents. He therefore concluded that each of the accidents contributed equally to the plaintiff's injuries and that this opinion was based on reasonable medical certainty. An expert for the state testified that the plaintiff's ultimate injury to her neck was entirely attributable to the first accident, which was caused by Castodio.

The court allowed the jury to consider the testimony of both experts regarding causation and apportionment of damages. The jury rendered separate verdicts in favor of the plaintiff, and awarded $33,333.34 in noneconomic damages against the defendant and $33,333.34 in noneconomic damages against the state and Farnan.[2]

The defendant and the state both filed separate motions to set aside the verdicts, claiming that the court should not have allowed the plaintiff to offer the testimony of Zeppieri when his testimony was speculative and without a factual or scientific basis. The court granted the motions to set aside the verdicts. In its memorandum of decision on the motions to set aside the verdicts, the court noted that "Zeppieri gave no basis for his conclusion that each accident contributed equally to the plaintiff's permanency other than his inability to apportion causation. His conclusion is, therefore, conjecture and surmise. The jury accepted Zeppieri's conclusion as indicated by its award to the plaintiff of exactly the same noneconomic damages against the state and against Castodio. Accordingly, the verdict must be set aside and a new trial ordered." The plaintiff appeals from the court's decision to set aside the verdict against the defendant Castodio.[3]

[2] The action against Farnan was withdrawn postverdict.

[3] The plaintiff withdrew her appeal as to the state.

I

The plaintiff claims first that the court's decision to set aside the verdict should be reversed because the court applied an incorrect legal standard in ruling that Zeppieri's opinion on apportionment of the injuries should have been excluded as speculative. We disagree.

"We review the trial court's action in granting or denying a motion to set aside a verdict by an abuse of discretion standard. *State* v. *Hammond*, 221 Conn. 264, 270, 604 A.2d 793 (1992). A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied. *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 164 (1994)." *Connecticut National Bank* v. *D'Onofrio*, 46 Conn. App. 199, 214–15, 699 A.2d 237, cert. denied, 243 Conn. 926, 701 A.2d 657 (1997).

"Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . *State* v. *Borrelli*, 227 Conn. 153, 165, 629 A.2d 1105 (1993) . . . ." (Internal quotation marks omitted.) *State* v. *Grenier*, 55 Conn. App. 630, 639, 739 A.2d 751 (1999), cert. granted on other grounds, 252 Conn. 931, 746 A.2d 794 (2000). "In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 93, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994). "[E]xpert opinions must be based on reasonable probabilities rather than mere speculation or conjecture if they are to be admissible . . . . To be

reasonably probable, a conclusion must be more likely than not." (Citation omitted.) *O'Reilly* v. *General Dynamics Corp.*, 52 Conn. App. 813, 817, 728 A.2d 527 (1999).

Zeppieri testified that each accident contributed substantially to the plaintiff's permanent injury on the basis of the fact that the second and third accidents aggravated the injuries caused by the first accident. Because the accidents happened within such a short time of each other, Zeppieri was unable to state with reasonable medical certainty that the disability from the first accident was more or less than the disabilities resulting from the other two accidents. In response to a question by the plaintiff's counsel on how to apportion fairly her present disability, Zeppieri testified: "My rationale in making a judgment is that we have three separate injuries, each of which was a substantial contributor to the total permanency. The most—there is no way to apportion precisely with any greater degree of certainty than we are doing. It's reasonable to say that each contributed equally to the ultimate outcome for this patient." Zeppieri further testified that he made that statement with reasonable medical certainty and that it was not a guess.

There is no dispute that Zeppieri was qualified to testify as an expert witness as to the cause and contributing factors of the plaintiff's injury. Zeppieri's opinion on apportioning the disability equally, however, is based on his inability to apportion the disability with reasonable medical certainty. Although Zeppieri testified that his opinion was correct because no one else could reasonably apportion the damages other than what he suggested, there is no factual basis supporting his opinion to divide the injury equally among the three accidents other than his inability to apportion the damage. We therefore conclude that the court properly found that Zeppieri's testimony on apportionment of damages was speculation.

The plaintiff claims that Zeppieri's testimony on apportionment was based on reasonable medical certainty and therefore was not speculation. While Zeppieri did say that his opinion on apportionment was based on "reasonable medical certainty," we must look at the entire substance of his testimony. *Struckman* v. *Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987), stated that "[w]hether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use·of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." The sum of Zeppieri's testimony provides that it is impossible to apportion the plaintiff's injury because the accidents were too close in time to gauge fairly which one caused what portion of the ultimate injury. We conclude that Zeppieri's testimony concerning the apportionment of damages equally among the three accidents was speculation and should not have been heard by the jury—at least not by way of witness testimony. The court did not abuse its discretion, therefore, when it set aside the verdict and ordered a new trial. Our inquiry, however, does not end here. The question remains as to the proper allocation of damages for the plaintiff's injuries.

## II

The plaintiff claims that even if it was correct to exclude Zeppieri's opinion on apportionment, the court improperly granted the motion to set aside the verdict because the defendant is jointly and severally liable to the plaintiff when the injury cannot be apportioned. The defendant claims that he is not jointly and severally liable. Rather, he claims that when liability cannot be apportioned, the final tortfeasor, who takes the victim as he finds her, should be liable for all of the plaintiff's injuries. We disagree with both parties.

Prior to 1986, Connecticut adhered to the common-law doctrine of joint and several liability with no right of contribution among joint tortfeasors. *Donner* v. *Kearse*, 234 Conn. 660, 666, 662 A.2d 1269 (1995). With the enactment of tort reform legislation in 1986, however, "the legislature adopted comparative negligence principles, and, consequently, the rules of joint and several liability no longer govern common-law negligence actions in Connecticut." *Babes* v. *Bennett*, 247 Conn. 256, 266, 721 A.2d 511 (1998).[4] "The legislature sought

[4] "With the enactment of the Tort Reform Act of 1986; Public Acts 1986, No. 86-338, § 3, codified in part under General Statutes (Rev. to 1987) § 52-572h; the legislature adopted comparative negligence principles for negligence actions. Those tort reform provisions were later amended by Public Acts 1987, No. 87-227, § 3." *Babes* v. *Bennett,* supra, 247 Conn. 266–67 n.7.

General Statutes § 52-572h provides in relevant part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose

to remedy the growing concerns regarding the cost and availability of liability insurance by abrogating the doctrine of joint and several liability for negligent tortfeasors and thus imposing limitations on a negligent defendant's obligation to pay damages." *Bhinder* v. *Sun Co.*, 246 Conn. 223, 232, 717 A.2d 202 (1998).

General Statutes § 52-572h (c) now provides in relevant part: "In a negligence action to recover damages resulting from personal injury . . . if the damages are

negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment. . . .

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section."

determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." Under § 52-572h (f), the extent of each party's negligence, in the form of a percentage, is determined by the trier of fact. The statute is silent, however, as to what happens when liability cannot be apportioned.

Our resolution of this claim is guided by well established rules of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997)." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, supra, 246 Conn. 230–31. "We also note the rule of statutory construction that statutes in derogation of common law should receive a strict construction and [should not] be extended, modified, repealed or enlarged in [their] scope by the mechanics of construction. *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995)." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, supra, 231.

The plaintiff claims that § 52-572h is in derogation of the common law and, because the statute is silent on the issue of inability to apportion negligence among

multiple tortfeasors, we should revert to common-law joint and several liability in the present case. A review of the legislative intent behind the enactment of § 52-572h and case law interpreting the statute indicates that § 52-572h is in derogation of the common law. See id., 231. We do not find, however, that the exclusion of language in the statute on matters concerning inability to apportion damages requires us to apply common-law joint and several liability. "[T]he operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." *Willoughby* v. *New Haven*, 123 Conn. 446, 454, 197 A. 85 (1937). The matter of apportioning damages among multiple tortfeasors is clearly within the scope of § 52-572h. Reverting to common-law joint and several liability when apportionment of damages among multiple tort-feasors is not possible would defeat the unambiguous intent of the legislature to eliminate joint and several liability.

While one of the purposes of the enactment of § 52-572h was to protect one codefendant from paying the entire judgment at the claimant's option, "[t]he legislative history of [Public Acts 1987, No.] 87-227 also indicates that the legislature intended to maximize the plaintiff's ability to recover damages from the parties whose negligence caused his injuries." *Babes* v. *Bennett*, supra, 247 Conn. 270. This is true even where a defendant has to bear more than his share of the damages due to the insolvency of another defendant. Id., 271; see General Statutes § 52-572h (g) (1).

In the rare case where damages cannot be apportioned between two or more accidents, the plaintiff who can prove causation should not be left without a remedy. One judicial response to situations in which a jury is unable to make even a rough apportionment of damages is to apportion damages equally among the various accidents. See *Loui* v. *Oakley*, 50 Haw. 260,

264, 438 P.2d 393 (1968); *Campione* v. *Soden*, 150 N.J. 163, 184, 695 A.2d 1364 (1997); W. Prosser & W. Keeton, Torts (5th Ed. 1984) p. 350. Our legislature's objective in enacting § 52-572h will be achieved by adopting a similar approach. The trier of fact's responsibility in cases involving injuries sustained in successive accidents is to apportion the damages among the parties whose negligence caused the plaintiff's injuries. We hold that the trial court should instruct the jury that if it is unable to determine how much of the plaintiff's damages is attributable to each tortfeasor, the jury may make a rough apportionment. "The absence of conclusive evidence concerning allocation of damages will not preclude apportionment by the jury, but will necessarily result in a less precise allocation than that afforded by a clearer record." *Campione* v. *Soden*, supra, 184. If the jury is unable to make even a rough apportionment, it must apportion the damages equally among each party whose negligent actions caused injury to the plaintiff, including settled or released persons as contemplated by § 52-572h (n). On retrial, the court shall instruct the jury on apportionment of damages consistent with this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.

