[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SET ASIDE VERDICT AND MOTION FOR REMITTITUR PURSUANT TO PRACTICE BOOK SEC. 16-35 (# 157.25 157.50)
Based on unrefuted and uncontradicted credible evidence the jury could have reasonably found that on December 28, 1992 at approximately 9:00 a.m., the plaintiff, Andree Lorquet fell, landing on her face, on the premises identified as 850 Main Street, Bridgeport, Connecticut. These premises are the headquarters of the defendant, People's Bank, and are owned, controlled and maintained by the defendant, People's Bank. The plaintiff's fall was caused by the negligence of the defendant in that it permitted an accumulation of ice on said premises which were being utilized by the plaintiff as a business invitee to the defendant's banking business.
As a result of the plaintiff's fall, the plaintiff sustained painful and severe injuries including a "through and through" laceration of her CT Page 6368 chin, scarring of her chin, displaced upper left incisor, contusions to her left shoulder, knee and left hip sprain and sprain to her cervical spine and lumbar spine. Further, the plaintiff has endured the pain, suffering and emotional distress caused by these injuries.
The plaintiff was transported by ambulance to Park City Hospital where she was initially treated including sutures to the laceration in her chin. These sutures were later taken out by Dr. Keller. The plaintiff incurred an ambulance bill in the amount of $254.50; a hospital bill in the amount of $964.23 and a bill from Dr. Keller in the amount of $35.00.
On December 29, 1992, the plaintiff was treated by Sidney B. Cohen, D.M.S. Dr. Cohen diagnosed a traumatic injury to the plaintiff's upper left central incisor as a class one fracture which was displaced outward. Treatment included a root canal, a post and core insertion of a metal rod 2/3rds into the tooth to secure the fracture, preparation for a crown, and the placement of a permanent crown. The plaintiff's last visit with Dr. Cohen occurred on April 12, 1993. The plaintiff incurred a dental bill from Dr. Cohen in the amount of $1685.00.
The plaintiff visited Dr. Donald Dworken, an orthopedic specialist, on December 31, 1992. Dr. Dworken's initial evaluation indicated sutures to the plaintiff's chin, trouble talking, swelling of lower lip and trauma to the plaintiff's face. The evaluation also indicated injury to the plaintiff's hip and groin, limping favoring her left lower extremity and spasms to the plaintiff's thoracic and lumbar spine. The plaintiff continued to treat with Dr. Dworken for a period of about 6 months. The treatment consisted of physical therapy, exercise program and anti-inflammatory medication. The plaintiff's final visit with Dr. Dworken was in June, 1993, whereat Dr. Dworken conducted a comprehensive exam. Dr. Dworken assessed the plaintiff's injury as a 4-5% permanent partial disability of the plaintiff's neck and a 4-5% permanent partial disability of the plaintiff's lower back. The implication of such permanent partial disabilities include difficulty bending and rotating in the neck and lower back regions, physical endurance, limitations in running, walking, sitting, standing and lifting. The plaintiff lastly visited Dr. Dworken in November, 1999 wherein Dr. Dworken confirmed his previous assessment including the permanency thereof. The plaintiff incurred a medical bill from Dr. Dworken in the amount of $2455.00.
The plaintiff testified that she did not sustain any injuries to her neck or back before or after the fall on December 28, 1992 nor did she have any limitation or restriction on her physical activities prior to the fall on December 28, 1992.
At the time of the fall, the plaintiff was employed as a nurse's aide CT Page 6369 for an elderly lady in New York City. Her salary was $526.00 per week. The plaintiff lost 6 weeks of work convalescing from her injuries. Thereafter the plaintiff returned to her employment and continued her employment until May, 1994 at which time her elderly patient passed away.
The plaintiff testified that she remained out of work for about 2 years looking for work compatible with her limitations i.e. light duty and minimal lifting. During this 2 year period the plaintiff moved to Massachusetts and had to be re-certified as a nurse's aide. The plaintiff became re-employed at a nursing home in Boston, Massachusetts. The plaintiff claimed lost wages for this 2 year period of unemployment.
In addition to the foregoing injuries, the plaintiff claimed damages for emotional distress as she testified she was "afraid for the future". The plaintiff also testified that she was self-conscious regarding the scar on her chin. As regards pain and suffering, the plaintiff testified that she has experienced pain from the day of the accident to the present which is almost 7 years. Further, she has a life expectancy of 17 years and it is anticipated, according to Dr. Dworken, that she will continue to experience pain and suffering the balance of her life. Lastly, the plaintiff testified that her enjoyment of her life's activities has been diminished as regards activities and her grandchildren.
The jury returned a verdict in the amount of $332,687.21 consisting of Economic Damages of $73,274.21 and Non-Economic Damages of $259,687.00.[1]
The defendant has filed a Motion to Set Aside Verdict and Motion for Remittitur. The defendant contends the verdict is excessive and against the evidence. The plaintiff has objected thereto.
"A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied." Card v. State,57 Conn. App. 134, 138, 747 A.2d 32 (2000).
"In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the CT Page 6370 evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) Gladu v.Sousa, 252 Conn. 190, 192-93, 745 A.2d 798 (2000).
"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of facts as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive." (Citations omitted; internal quotation marks omitted.) Gaudio v. GriffinHealth Services Corp., 249 Conn. 523, 550-51 733 A.2d 197 (1999).
"The verdict must be set aside if we determine that the jury could not have reasonably concluded that such conduct legally caused the plaintiff's injuries." Paige v. Saint Andrew's Roman Catholic Corp.,250 Conn. 14, 26, 734 A.2d 85 (1999).
"[I]f the jury could reasonably have reached its conclusion, the verdict must stand even if this court disagrees with it. . . . [T]he plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient." (Citations omitted; emphasis in original; internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp., supra,249 Conn. 534-35. "Similarly, [t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury. . . . In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citation omitted; internal quotation marks omitted.) Childsv. Bainer, 235 Conn. 107, 112-13, 663 A.2d 398 (1995).
In analyzing this case it is important to note that the jury rendered CT Page 6371 a general verdict. Therefore the court must conclude that the jury found all issues in favor of the plaintiff, including the absence of any contributory negligence on her part. This court also observes that the evidence and testimony presented by and on behalf of the plaintiff regarding her injuries and damages was unrefuted, uncontradicted and uncontroverted.
In the instant case the plaintiff sustained a permanent partial disability of 4-5% to both her neck and low back in 1992. Based on her life expectancy of 17 years, this amounts to approximately 24 years. Likewise the pain and suffering, emotional distress and other limitations and restrictions associated therewith amount to approximately 24 years.
The plaintiff also has and will endure facial scarring. She also has lost the nerve of one tooth and has a permanent crown.
The court finds the award of non-economic damages in this case falls somewhere within the necessarily uncertain limits of fair, just and reasonable compensation. The court further finds that the verdict of non-economic damages does not so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. This court finds that the evidence amply and plausibly supports a fair just and reasonable jury award of non-economic
damages in the amount of $259,687.00.
As regards the defendant's Motion for Remittitur, "The trial court may order a remittitur if it concludes, as a matter of law, that the verdict is excessive." Presidential Capital Corp. v. Reale, 231 Conn. 500, 510,652 A.2d 489 (1994).
"[T]he court [is] obliged, when ruling on [a motion for] remittitur, to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. The only practical test to apply to this verdict is whether the award so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.
The economic damages in this case construed entirely favorable to the plaintiff are as follows:
 Bridgeport Ambulance $ 254.50 Park City Hospital 964.23 Park City Radiology 98.50 Dr. Keller 35.00 Dr. Cohen 1685.00 CT Page 6372 Dr. Dwoken 2455.00
 6 week convalescent period after fall 6 x $526.00/week 3156.00
 104 weeks (2 years) unemployment period after Plaintiff's elderly patient died 104 x $526.00/week 57,704.00
Total $ 63,352.23
Although the jury awarded economic damages in the amount of $73,274.21 this court concludes that there is an arithmetic mistake in the amount of $9921.98 ($73,274.21 less $63,352.23).
Therefore the court orders a remittitur in the amount of $9,921.98 as regards economic damages.
In conclusion this court finds that the jury's award of non-economic
damages in the amount of $259,687.00 is legally appropriate and legally sound. However, the jury's award of economic damages in the amount of $73,294.21 is excessive due to an arithmetic error in the amount of $9921.98. Therefore the total damages in this case is $323,039.23 ($259,687.00 plus $63,352.23).
JOHN W. MORAN, JUDGE