[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE POST TRIAL MOTIONS
 I FACTS
This motor vehicle personal injury case was tried to a jury, which rendered a verdict on January 30, 2002 in favor of the plaintiffs. The jury awarded economic damages of $225,000 and $75,000 in non-economic damages to the plaintiff James L. Bossie and $15,000 to his wife for loss of consortium. The defendants filed a motion for remittitur, claiming that the damages awarded were excessive as a matter of law. In the alternative, they also moved to set aside the verdict as excessive as well as contrary to the law and the evidence. The central issue is whether there was adequate proof of the plaintiff's lost wages to support the economic damages award. A second issue is whether the court erred in permitting the plaintiff's treating physician to testify as an expert and provide a permanency rating. For the reasons set forth in detail below, the court denies both motions and finds that the jury's verdict is adequately supported by the facts.
 II DISCUSSION
A. Standard of Review Concerning Motions for Remittitur and to Set Aside a Verdict.
Connecticut General Statutes § 52-216a provides the statutory framework for motions for remittitur and states: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial."
In determining whether or not any verdict is excessive as a matter of law, the court must review the evidence as a whole and determine whether it supports the verdict entered. On this issue, the law concerning motions to set aside verdicts provides the court with the guidelines to be used. "When considering a motion to set aside the verdict, this court's function is to determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the CT Page 6406 jury's verdict." (Internal quotation marks omitted.) Skrypiec v. Noonan,228 Conn. 1, 10, 633 A.2d 716 (1993), Preston v. Wellspeak,62 Conn. App. 77, 81, 767 A.2d 1259 (2001). "A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied." Card v. State, 57 Conn. App. 134, 138,747 A.2d 32 (2000). "A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) Kurti v. Becker, 54 Conn. App. 335, 337, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).
Mather v. Griffin Hospital, 207 Conn. 125, 138-139, 540 AS.2d 666 (1988) states as follows: "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair minded persons as to the amount that should be awarded. This right is one obviously immovable limitation on a legal discretion of the court to set aside a verdict since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair minded men passed upon by the jury and not by the court. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Citations omitted; internal quotation marks omitted.)
B. Testimony Re Lost Wages
The jury could reasonably have found the following facts, since it was admitted that the defendant employee of Webster was negligent in operating his vehicle on the evening of December 1, 1998 when it struck the plaintiff's vehicle and injured him. At the time of the collision, the plaintiff was fifty-six years of age and working sixteen hours a day in two positions. His wage loss claim is for his second job, his own business delivering prescription eyeglasses to various opticians and stores.
As to his daily routine, he testified that his practice was to finish his main job. Around five in the evening he would drive to the optical laboratory, begin to sort the work, bag the glasses in cases or with a CT Page 6407 cardboard cover and then deliver them to the various customers; as well as pick up materials these customers had and return them to the laboratory. He would typically end his day between 12 and 1 o'clock at night. He has a total of four such routes and covered one himself. It was while he was on such a route delivery that he was injured. He testified that before the accident, he worked every night and rarely took a night off. Because of the injury to his back caused by the collision, he has had to take many more nights off. The first year after the accident, his sons and daughters helped him a great deal and ran some of the routes for him; his wife also helped. Many times they would not accept funds from him, although others were paid by him to run the routes, on which he would nonetheless, continue to make a small sum over the expense of hiring them.
Mr. Bossie provided his tax returns for the years in question, and although the gross income from the business increased a small amount in the years after his injury, his testimony was that had he been able to drive himself, the net income he would receive would have been greater. He testified that it was approximately $9,000 a year. In 1999, he stated the loss was less because his children were driving for him at no charge. The loss that year was estimated at slightly over $6,000.00.
The parties also stipulated at the time of trial that the plaintiff had a life expectancy of an additional twenty-two years. The court instructed the jury with regard to lost wages, that they could properly consider the plaintiff's life expectancy to determine the years he would probably continue to work. No instruction was sought, or given, concerning a reduction in any award of lost wages to take into account the present value of future sums of money.
Thus, as the plaintiff points out, the jury could have determined the following from the evidence:
Medical Bills $ 4,775.96
Lost Wages 1999 $ 6,665.00
Lost Wages 2000, 2001 @ $9,000 a year $ 18,000.00
Future Lost Wages @ $9,000 for twenty-two years $198,000.00
Total $227,440.96
Defendants claim it is not justifiable to believe that someone would continue to work for all of the years of his life expectancy. Given the testimony of the hours that Mr. Bossie regularly worked at age fifty-six CT Page 6408 and continued to work despite his back injury, it is not unreasonable to assume that at some time he would retire from his day-time employment and only operate his optical delivery business. Mr. Bossie testified about his children's future college expenses, which would require his continued employment. Those obligations alone spanned ten years into the foreseeable future. In short, the jury could have concluded that this was an extremely hardworking man, dedicated to his children, who would continue to work for "another ten or twelve years or as long, God willing let's me go, I'm going to go."
But it is not the court's function to second-guess the jury or even to concur in their precise conclusions, to the extent they can be known. The parties have a constitutional right to trial by jury and "the amount of a damage award is a matter peculiarly within the province of the. . . . . jury." Mather v. Griffin Hospital, supra 207 Conn. The court cannot find, based on the evidence and law, that the amount shocks the conscience and is excessive as a matter of law.
C. Dr. Guardino's Testimony
Defendants further claim that permitting Dr. Guardino to testify at trial as an expert as to the partial disability rating provided was error and that the verdict must therefore be set aside. This issue first came before the court on defendants' motion in limine to preclude this evidence, which the court denied. Primarily, the defendants claim, Dr. Guardino was not adequately trained or experienced in the use of the American Medical Association's orthopedic guidelines for such ratings as he is an internist who only rarely provides such ratings. In BeverlyHills Concepts, Inc. v. Schatz And Schatz, 247 Conn. 48, 62 717 A.2d 724
(1998), the court stated: "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. [I]t is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience." (Internal citations omitted; quotation marks omitted.)
Defendants appear to argue that only a physician who has specialized in orthopedics could be qualified to give such a rating. Nonetheless, the court does not believe that this is so. For example, chiropractic physicians whose training would be claimed by some to be inadequate for the task also often give disability ratings. Chiropractors do not possess either the medical license or general medical training Dr. Guardino CT Page 6409 possesses. Certainly Dr. Guardino's medical training provides him with significantly greater qualifications than the average person possesses concerning the human body and its functions. The court does not believe more is required. The jury also heard the testimony concerning Dr. Guardino's limited experience providing such ratings in the past and his lack of specific training in the use of the AMA guidelines. Further, the court, in its instructions, provided the jury with the law that permits the jury to determine whether or not the testimony provided was credible and worthy of belief by them, even though Dr. Guardino was qualified as an expert.
The second issue raised by defendants is the claim that the court permitted the physician to comment on Mr. Bossie's credibility. The specific question at issue was:: "In your experience in treating Mr. Bossie for some approximately fifteen years now, have you found him to be a credible historian?" This question, however, can only be analyzed in its proper context. The question was asked on redirect examination after the defendants' cross-examination of the physician. During that cross-examination, defendants had asked about Mr. Bossie's statements to his treating physician and his "subjective" reports of his symptoms to him.[1]
The cross-examination soon concluded and the redirect examination by the plaintiff began. The first questions were of the physician's observations of his patient. He stated "I am able to notice changes in his movements, he does not move around and is more restricted in motion. It appears that he is in pain and he says he is in pain." The challenged question was then asked and it is in this full context that it must be examined.
While the defendants argue that Mr. Bossie's credibility was not at issue, the court finds that only moments earlier they had themselves made it an important issue by the implications raised in their cross-examination of Mr. Bossie's treating physician. The court overruled their objection to the question then and upholds its ruling now. The jury would have understood that the question was not whether they, the jury, should find Mr. Bossie worthy of belief. They would have understood the defendants' attempt to imply that Dr. Guardino's medical findings were based on subjective symptoms based only Mr. Bossie's own reports. The redirect examination then elicited the fact that those findings were based on the physician's long years of experience with his patient as well as his observations. In the context in which the question was asked in response to the defendants' own actions, this precise question was proper. CT Page 6409-a
For the foregoing reasons, the court denies both the motion for remittitur and the motion to set aside the verdict.
BY THE COURT
___________________________ BARBARA M. QUINN, Judge