[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This personal injury action was tried to the court on November 5, 2002. After considering the evidence and the arguments of counsel, the court issues this memorandum of decision.
In his two count complaint, dated January 24, 2000, the plaintiff, John A. Rinaldi, alleges, in the first count, that on June 17, 1998,[1] he was operating a Dodge Pick-up Truck on Interstate Route 91 in Hartford, Connecticut, when he negligently was struck from behind by a Lincoln Continental which was driven by the defendant, Fahrudin Custovic. Rinaldi claims that this collision caused him to suffer injuries, including the aggravation of a degenerative arthritis condition in his cervical and lumbar spines and an aggravation to a pre-existing cervical herniated disc.
In the second count, he alleges that, at the same time, the defendant Jerzey Kondratynk[2] was driving a Ford Probe, and negligently crashed his vehicle into Custovic's vehicle, causing it to crash into the rear of Rinaldi's vehicle a second time. Rinaldi also claims that Kondratynk's negligence caused him to suffer the same injuries described above. See complaint, first count, ¶ 5 and second count, ¶ 5.
Kondratynk was defaulted for failure to appear by order of the court dated March 4, 2002 (#107.10). Rinaldi and Custovic were the only witnesses who testified at trial.
Rinaldi described being hit from behind twice, the second impact occurring within seconds of the first. According to him, the first impact was more severe than the second. His recollection of the accident was somewhat vague. He stated also that he briefly lost consciousness. Photographic evidence of the rear of the plaintiffs truck shows moderate damage. Custovic admitted that he hit Rinaldi from behind after Custovic skidded and after Custovic was hit from behind. No medical evidence was offered to prove which collision proximately caused Rinaldi's injuries. CT Page 14828
Rinaldi's allegations against Kondratynk in the second count, that his negligence also caused Rinaldi's injuries, are admissions by Rinaldi to that effect. See Drier v. Upjohn, 196 Conn. 242, 245-249, 492 A.2d 164
(1985). "The time has passed when allegations in a pleading will be treated as mere fictions, rather than as statements of the real issues in the [case] and hence as admissions of the parties." (Internal quotation marks omitted.) Ferreira v. Pringle, 255 Conn. 330, 346, 766 A.2d 400
(2001).
Our Appellate Court recently has addressed the applicable law in cases where a plaintiffs injuries are caused by more than one tortfeasor. "In the rare case where damages cannot be apportioned between two or more accidents, the plaintiff who can prove causation should not be left without a remedy. One judicial response to situations in which a jury is unable to make even a rough apportionment of damages is to apportion damages equally among the various accidents. . . . Our legislature's objective in enacting § 52-572h[3] will be achieved by adopting a similar approach. The trier of fact's responsibility in cases involving injuries sustained in successive accidents is to apportion the damages among the parties whose negligence caused the plaintiffs injuries. We hold that the trial court should instruct the jury that if it is unable to determine how much of the plaintiffs damages is attributable to each tortfeasor, the jury may make a rough apportionment. The absence of conclusive evidence concerning allocation of damages will not preclude apportionment by the jury, but will necessarily result in a less precise allocation than that afforded by a clearer record. . . . If the jury is unable to make even a rough apportionment, it must apportion the damages equally among each party whose negligent actions caused injury to the plaintiff. . . ." (Internal quotation marks omitted and citations omitted.) Card v. State, 57 Conn. App. 134, 144-145, 747 A.2d 32 (2000).
After consideration of all the evidence, the court finds that each defendant's negligence caused the plaintiffs injuries. A rough apportionment of the damages is not possible based on the evidence before the court. Accordingly, it must apportion the damages equally between Custovic and Kondratynk.
Rinaldi's claims for economic damages consist of expenses incurred for medical treatment and physical therapy. Defendant's Exhibit A presents certain reports of Dr. Paul B. Murray, an orthopedist consulted by Rinaldi. In 1996, Dr. Murray diagnosed Rinaldi as suffering from degenerative arthritis in his cervical and lumbar spines. Two weeks before the accident, on June 2, 1998, Rinaldi was evaluated by Dr. Murray. He found that Rinaldi's cervical spine was normal in appearance, CT Page 14829 but that he had a five per cent limitation of motion. Examination of his lumbar spine revealed a loss of normal lumbar lordosis. Some tenderness in the lumbar region was noted, as well as a five per cent limitation of motion. His impression was of cervical and lumbar sprains, and of rotator cuff tendinitis in both shoulders. It is also noted that he gave Rinaldi an injection in his right shoulder. See Defendant's Exhibit A.
Plaintiff's Exhibit 3 reflects Dr. Murray's evaluations of Rinaldi after the accident. Dr. Murray first saw him again on July 8, 1998, about three weeks after the accident. Rinaldi complained of post-accident pain. His examination of Rinaldi showed a loss of normal cervical lordosis and a ten per cent limitation of motion. His shoulders showed full range of motion without pain. Examination of the lumbar spine similarly revealed a loss of normal lumbar lordosis and a five per cent "limitation of motion secondary to pain. "Id. In addition to the previous diagnoses, Dr. Murray diagnosed spinal stenosis and a herniated disc. He stated, "I do feel the above diagnoses were aggravated by the June 17, 1998, accident. These diagnoses existed prior to the motor vehicle accident." Id.
Dr. Murray saw Rinaldi for the last time on September 16, 1998, a little over two months after the previously noted visit. Continuing complaints of neck and back pain were noted. A loss of normal cervical lordosis was again noted, but Rinaldi had returned to the five percent limitation of motion which was noted before the accident. Again, the reference to loss of lumbar lordosis is noted, but a loss of lumbar lordosis was noted before the accident. The same preaccident loss of five per cent range of motion in the lumbar area is noted.
At that time, Dr. Murray's plan for Rinaldi was stated: "Activity modification, moist heat, home exercises and return on a prn basis."[4]
This is very similar to the plan stated after Dr. Murray saw Rinaldi on June 2, 1998, which also included activity modification and moist heat. See Defendant's Exhibit A. Notably, the last report does not discuss Rinaldi's shoulders. In addition, it does not ascribe the pain to the accident. His impression was again described as cervical and lumbar spine degenerative arthritis.
Dr. Murray also prescribed physical therapy. Plaintiffs Exhibit 4 includes the records of physical therapy sessions which Rinaldi underwent between July and October, 1998.
At trial, Rinaldi stated that his pain is continuing and that it has restricted his activities. He acknowledged that he had difficulty with his neck prior to the accident, although he claimed to be "fine" before CT Page 14830 it occurred.
According to Rinaldi, he was told that nothing could be done for him. Dr. Murray's reports do not support this. As noted, Dr. Murray advised Rinaldi to return as needed. Apparently, after the occasions in 1998 described above, he never did.
Based on this record, the court is unpersuaded that the events of June 17, 1998 caused Rinaldi to suffer permanent injury. He was suffering from pre-existing conditions, including degenerative arthritis, prior to the accident. Dr. Murray's report after the July, 1998 visit refers to aggravation of his condition caused by the accident, but certain measurable symptoms had returned to the pre-accident level by the time of the last visit to Dr. Murray in September, 1998. The absence of any follow-up visits in the over four years which have elapsed since then has led to the absence of any further time-line to show whether the cervical spine returned to its preaccident condition shortly thereafter. The absence of such follow-up also tends to cast doubt on the magnitude of the claims. After all, Rinaldi remains employed. Apparently, he has had the wherewithal to seek medical treatment if necessary. Nevertheless, Rinaldi has proved that he is entitled to an award of noneconomic damages.
The parties' stipulated that (1) the cost of medical care, including the physical therapy, which resulted from the accident amounted to $3,417.00; (2) Rinaldi paid $100.00 towards that amount; and (3) the remaining sum of $3,317.00 was paid for by Rinaldi's health insurance.
After considering all the evidence, the court finds that Rinaldi is entitled to economic damages in the amount of $3,417.00 and noneconomic damages of $10,000.00, for a total amount of $13,417.00.
 CONCLUSION
Collateral source reduction in the amount of $3,317.00 is ordered. See General Statutes § 52-225a. Accordingly, the total award is $10,100.00. As noted, this sum is to be apportioned equally between Custovic and Kondratynk. Accordingly, judgment may enter against each defendant in the amount of $5,050.00, exclusive of costs. It is so ordered.
BY THE COURT
___________________ ROBERT B. SHAPIRO CT Page 14831 JUDGE OF THE SUPERIOR COURT